**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| MIDWEST ACCESS COALITION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:24-cv-02446-SHL-tmp |
| ) | |
| JONATHAN SKRMETTI, in his official ) | |
| capacity as Attorney General of Tennessee, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION TO DISMISS**

Tennessee banned abortion in 2022 after the Supreme Court, in <u>Dobbs v. Jackson Women's Health Organization</u>, 597 U.S. 215 (2022), allowed states to take their own stances on the procedure. <u>See</u> Tenn. Code Ann. § 39-15-213. In 2024, Tennessee enacted a law prohibiting the "abortion trafficking of minors," imposing criminal and potential civil penalties on any adult who "intentionally recruits, harbors, or transports a pregnant unemancipated minor within [Tennessee]" to obtain an abortion, without "the written, notarized consent" of the minor's parents. Tenn. Code Ann. 39-15-201.

According to the complaint, Plaintiff Midwest Access Coalition, Inc. ("MAC") is a nonprofit organization that helps people access legal abortion care by coordinating and funding transportation, lodging, meals, and childcare. (ECF No. 1 at PageID 5.) Among their clients are minors travelling from Tennessee. (<u>Id.</u> at PageID 6.)

On June 27, 2024, MAC and its then-co-plaintiff SisterReach, Inc., filed their complaint against Defendants Tennessee Attorney General Jonathan Skrmetti and all of the State's thirty-two District Attorneys. Concurrently, it filed the Motion for a Temporary Restraining Order or,

in the Alternative, a Preliminary Injunction and Emergency Hearing, seeking to enjoin

Defendants from enforcing the new law on the eve of its effective date.  (ECF No. 6.)  The

following day, the Court denied the temporary restraining order because Plaintiffs had "not

certified in writing any efforts they made to give notice to Defendants and the reasons why such

notice should not be required."  (ECF No. 14 at PageID 723.)  Since that time, the Court held a

hearing on the motion for a preliminary injunction on July 12, 2024 (ECF No. 27), and, more

recently, SisterReach, Inc., was dismissed as a plaintiff, leaving MAC to prosecute the action on

its own (ECF No. 49).

On September 17, 2024, Defendants filed the Motion to Dismiss for Failure to State a

Claim and for Lack of Subject Matter Jurisdiction.  (ECF No. 34.)  Defendants argue that MAC's

complaint should be dismissed based on lack of standing, sovereign immunity, and the

constitutionality of Tennessee Code Annotated § 39-15-201.  In addition, they contend that this

Court should abstain from ruling on unsettled questions of state law.  (ECF No. 35 at PageID

891–907.)  MAC responded to the Motion on October 15.  (ECF No. 39.)  Defendants replied

two weeks later.  (ECF No. 40.)

Because Plaintiff does not have standing to bring this claim, the Motion to Dismiss is

**GRANTED**.[1]

---

[1] Accordingly, MAC's Motion for Temporary Restraining Order or, in the Alternative, a
Preliminary Injunction and Emergency Hearing (ECF No. 6) is **DENIED AS MOOT**, to the
extent it was not previously disposed of by the Court's Order Denying Plaintiffs' Request for a
Temporary Restraining Order (ECF No. 14).

## BACKGROUND[2]

MAC is a non-profit organization based in Illinois "working towards a world where all people can access safe, free, and legal abortion care wherever they live."  (ECF No. 1 at PageID 5.)  MAC's members serve as "helpers and trusted adults for young people who become pregnant."  (Id. at PageID 27.)  At least until the "abortion trafficking of minors" law went into effect on July 1, 2024, MAC served minors traveling from Tennessee seeking an abortion.  (Id. at PageID 30.)  According to MAC, it sometimes provides these services in consultation with the child's parents or grandparents, but MAC does not seek parental consent before providing services to a minor.  (Id.)

MAC asserts that the abortion trafficking statute makes it a crime to support young people in Tennessee seeking legal abortion care, and, in so doing, violates the organizations' First and Fourteenth Amendment rights, which warrants extraordinary relief.  (ECF No. 1 at PageID 37–39.)  It challenges the following section of the statute:

> (a)    An adult commits the offense of abortion trafficking of a minor if the adult intentionally recruits, harbors, or transports a pregnant unemancipated minor within this state for the purpose of:
> (1)    Concealing an act that would constitute a criminal abortion under § 39-15-213 from the parents or legal guardian of the pregnant unemancipated minor;
> (2)    Procuring an act that would constitute a criminal abortion under § 39-15-213 for the pregnant unemancipated minor, regardless of where the abortion is to be procured; or
> (3)    Obtaining an abortion-inducing drug for the pregnant unemancipated minor for the purpose of an act that would constitute a criminal abortion under § 39-15-213, regardless of where the abortion-inducing drug is obtained.

---

[2] The Background section is taken from the complaint and is assumed to be true for purposes of ruling on the pending Motion.

3

Tenn. Code Ann. 39-15-213(a).  According to MAC, this section is unconstitutionally vague;

violates the freedoms of speech, expressive conduct, and expressive association; and is

overbroad.  (ECF No. 1 at PageID 37–39.)  Defendants filed a motion to dismiss, arguing failure

to state a claim and lack of subject matter jurisdiction.  (ECF No. 34.)

## APPLICABLE LAW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts

"construe the complaint in the light most favorable to the plaintiff, accept its allegations as true,

and draw all reasonable inferences in favor of the plaintiff."  Directv, Inc. v. Treesh, 487 F.3d

471, 476 (6th Cir. 2007); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002).  The

Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement

of the claim that will give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).  The court must

determine only whether "the claimant is entitled to offer evidence to support the claims," not

whether the plaintiff can ultimately prove the facts alleged.  Swierkiewicz v. Sorema N.A., 534

U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

For a court to adjudicate a claim, it must have subject-matter jurisdiction.  Mitchell v.

BMI Fed. Credit Union, 374 F. Supp. 3d 664, 668 (S.D. Ohio 2019) (citing Lujan v. Defs. of

Wildlife, 504 U.S. 555, 560 (1992)).  One justiciability doctrine that goes to a court's subject-

matter jurisdiction is standing.  Peoples Rts. Org. v. City of Columbus, 152 F.3d 522, 527 (6th

Cir. 1998).  Standing is embedded in Article III of the United States Constitution: "without

standing, a federal court cannot exercise jurisdiction because there is no case or controversy."

Mitchell, 374 F. Supp. 3d at 668 (citing Lujan, 504 U.S. at 560).

A party seeking to invoke a court's jurisdiction must establish the necessary standing to

sue before the court may consider the merits of that party's cause of action.  Whitmore v. Arkansas, 495 U.S. 149, 154 (1990).  To do so, a plaintiff must show that: (1) it has suffered an "injury in fact" that is (a) concrete and (b) particularized, as well as (c) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.  Block v. Canepa, 74 F.4th 400, 408 (6th Cir. 2023) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000)).  These constitutional requirements—commonly known as (1) injury-in-fact, (2) causation, and (3) redressability—are essential to establish standing.

## ANALYSIS

Defendants argue that the complaint should be dismissed because MAC lacks standing, Defendants are entitled to sovereign immunity, the abortion trafficking statute is constitutional, and the Court should abstain from ruling on unsettled questions of state law.  (ECF No. 35 at PageID 891–907.)  Because MAC's complaint does not identify or incorporate by reference any specific member of the organization who has Article III standing, thus failing to establish associational standing, the Motion to Dismiss is **GRANTED**.

Defendants first argue that MAC's complaint should be dismissed for lack of standing because it names no "adult" who intends to violate the statute.  (ECF No. 35 at PageID 892–93.)  MAC itself, as an organization and not an individual "adult," cannot violate the statute, according to Defendant, and thus pleads no injury-in-fact.  (Id. at PageID 892.)  Defendants acknowledge that MAC also seeks to sue "on behalf of its staff and volunteers," who are adults.  (Id. (quoting (ECF No. 1 at PageID 6).)  This arrangement is known as "associational or representative standing."  (ECF No. 40 at PageID 995 (quoting Children's Health Def. v. FDA,

No. 21-6203, 2022 WL 2704554, at *2 (6th Cir. July 12, 2022)).)  But, Defendants argue, an organization pleading associational standing must "identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct."  (ECF No. 35 at PageID 892 (quoting Ass'n of Am. Physicians & Surgeons v. FDA, 13 F.4th 531, 543 (6th Cir. 2021)).)  The fact that MAC names no such member, according to Defendants, is fatal to its standing.  (Id.)

In response, MAC asserts that it does not need to plead associational standing.  (ECF No. 39 at PageID 975 n.1.)  Rather, it is enough in a pre-enforcement First Amendment challenge like this one for MAC to allege (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest" that is [2] "proscribed by a statute" and that there is [3] "a credible threat of prosecution."  (Id. at PageID 976 (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 160 (2014)).)  According to MAC, its complaint alleges that it has engaged in activities protected by the First Amendment, and it "would resume these activities if they could be assured that they would not be prosecuted for doing so." (Id. at PageID 975–76.)

"An organization can satisfy Article III's standing requirements by suing on its own behalf, called 'organizational standing,' or by suing on behalf of its members, called 'associational' or 'representative' standing."  Children's Health Def., 2022 WL 2704554, at *2 (citation omitted).  In a pre-enforcement First Amendment challenge, MAC is correct that it must establish that "(1) [it] intend[s] to engage in expression that the Free Speech Clause arguably protects, (2) [its] expression is arguably proscribed by the [statute], and (3) [it] face[s] a credible threat of enforcement . . . ."  Fischer v. Thomas, 52 F.4th 303, 307 (6th Cir. 2022).  However, as Defendants point out, it appears that MAC itself cannot be injured by the statute, because the statute prohibits only an "adult" from engaging in so-called abortion trafficking.  MAC is a non-

6

profit organization, not an "adult."

Further, the pre-enforcement First Amendment cases on which MAC relies, including Fischer and Driehaus, are distinguishable.  The Fischer plaintiffs were individuals who did not need to plead organizational standing.  52 F.4th at 306.  The Driehaus plaintiff, although an organization, challenged a law that made it a crime for any "person" to make certain statements, 573 U.S. at 151, and, because an organization is a person under the law, it successfully pled an injury if the statute were to be enforced.  Here, however, because MAC is not an "adult," it cannot plead an injury-in-fact and lacks organizational standing.

MAC's only way forward, then, is to plead associational standing, suing on behalf of its members.  But it has "failed to identify a single member who sustained an Article III injury." Friends of George's, Inc. v. Mulroy, 675 F. Supp. 3d 831 (W.D. Tenn. 2023), rev'd and remanded on other grounds, 108 F.4th 431 (6th Cir. 2024).  It is not enough for MAC to plead in general terms that it sues "on behalf of its staff and volunteers" without identifying a staff member or volunteer by name.  See Green Party of Tenn. v. Hargett, No. 13-CV-224, 2014 WL 11638572, at *10 (E.D. Tenn. Feb. 20, 2014) (finding no associational standing where an organization pled an injury to its "members" without naming any particular individual).

MAC argues that it has identified a member who is likely to sustain an injury in Diana Parker-Kafka, executive director of MAC, whose declaration is attached to the Motion for Temporary Restraining Order.  (ECF No. 39 at PageID 975.)  But her declaration (ECF No. 6-3) is not part of the complaint (ECF No. 1).  It is true that, in limited circumstances, a court can look outside the complaint to determine if it has subject matter jurisdiction.  See Yoe v. Crescent Sock Co., No. 15-CV-3, 2015 WL 13847410, at *4 n.6 (E.D. Tenn. Dec. 11, 2015) ("Assessment of the facial sufficiency of a complaint must ordinarily be undertaken without regard to matters

7

outside the pleadings, but the Court may 'consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein without converting the motion to one for summary judgment.'" (quoting Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680–81 (6th Cir. 2011))).  But Parker-Kafka's declaration does not satisfy that narrow exception.

Although Parker-Kafka's declaration appears central to MAC's claims, it is not referenced in the complaint.  Because the Court's analysis is generally "confined to the four corners of the complaint," Snyder v. Vill. of Luckey, No. 24-3530, 2025 WL 3269361, at *4 (6th Cir. Nov. 24, 2025), the Court cannot consider the declaration in the standing analysis.  See, e.g., Callan v. AutoZoners, LLC, No. 21-CV-01479, 2022 WL 204927, at *4 (N.D. Ohio Jan. 24, 2022) ("Although these exhibits appear to be central to Callan's wrongful termination claim, Callan does not specifically reference any of this correspondence in his Complaint. Consequently, the Court will not consider these exhibits in ruling on AutoZone's Motion."); Cooper v. Countrywide Home Loans, Inc., No. 14-CV-14137, 2015 WL 1541852, at *3 (E.D. Mich. Apr. 7, 2015) ("Countrywide argues that the Servicing Transfer Letter is central to Plaintiff's claims, but since it is not referred to in the Amended Complaint, it does not qualify for the exception.").  Without that one exhibit, MAC has not pled that any member of its organization will be injured, which is necessary here to establish Article III standing.  Thus, MAC does not plead associational standing, either.

Because the complaint is dismissed for lack of standing, the Court does not reach the Parties' other arguments.

## CONCLUSION

The Court lacks jurisdiction to hear this case, and thus Defendant's Motion to Dismiss is

**GRANTED**.  MAC's complaint is **DISMISSED WITHOUT PREJUDICE**.  The Scheduling

Conference set on May 6, 2026, at 3:00 p.m. is canceled.

　　　**IT IS SO ORDERED,** this 31st day of March, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
